FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

MAY - 6 2003

DAVID J. MALAND, CLERK ·
BY
DEPUTY _Becca Ferrell_

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT
### SHERMAN DIVISION

KHOSROW SADEGHIAN,
PLAINTIFF

V.

CITY OF AUBREY, TEXAS
DEFENDANTS

§
§
§
§
§
§
§
§

CIVIL ACTION NO. _4:03cv177_

JURY

## DEFENDANT CITY OF AUBREY, TEXAS'S NOTICE OF REMOVAL

Defendant City of Aubrey ("the City") files this Notice of Removal in accordance with 28 U.S.C. §§ 1441 and 1446.

## 1.   BACKGROUND AND PROCEDURAL HISTORY

**a.**   Plaintiff ("Sadeghian") bought Wilson Mobile Home Park on August 5, 1997. After purchasing the Park, Sadeghian changed its name to "Aubrey Family Mobile Home Park" ("the Park").

**b.**   Both before and after Sadeghian bought the Park, the City diligently sought to enforce its zoning Ordinance No. 135-7 § 19F, passed in 1987, requiring that an"[a]pplication for the establishment of a mobile home park ... must be accompanied by a plat ..."

**c.**   On August 19, 1997, the City gave written notice to Sadeghian regarding the requirement — and gave him a two-week grace period — to file a park plat for the City's evaluation.

**d.**   On September 16, 1997 and again on October 21, 1997, Sadeghian attended City Council meetings in which the Council agreed to two 30-day time extensions in

which to file his park plat.  Sadeghian did not attend the November 18, 1997 Council meeting so the Council tabled the issue until the next meeting.

e.      On December 11, 1997, Sadeghian met with the City of Aubrey Planning & Zoning Committee.  The Committee had planned to consider Sadeghian's plat and requests for variances, but opted to table the action because Sadeghian had still not submitted the plat or variance requests.

f.      On December 12, 1997, the City Attorney gave Sadeghian written notice to submit the required plat and requests for variances no later than January 8, 1998, or risk being cited for ordinance violations.

g.      In January, 1998, Sadeghian finally submitted his park plat and variance requests to the City Council.  At the January 20, 1998 Council meeting, the Council: (1) rejected Sadeghian's plat; (2) requested that he revise it and resubmit it; (3) denied certain variance requests; and, (4) approved other variance requests subject to plat approval.   One of the variance requests that the Council denied related to the requirement that the then dirt/gravel interior streets of the Mobile Home Park be paved in accordance with the City's zoning ordinance.  The City voted unanimously to reject Sadeghian's request for "as is acceptance of streets".

h.      On February 12, 1998, Sadeghian met with the Planning & Zoning Committee, who noted several discrepancies in Sadeghian's park plat.

i.      On February 17, 1998, Sadeghian met with the Council, who voted to approve Sadeghian's plat, subject to Sadeghian presenting a specific proposal of phased development showing how the improvements shown on the plat would be implemented. The Council further approved a temporary permit for Sadeghian to operate the Park that

would expire in one year, at which time the Council would consider renewing the permit based on the progress of the phase development.

j.      During the March 17, 1998 Council meeting — instead of submitting a phased development plan — Sadeghian appeared with his attorney and requested the Council to table the phase development plan submittal until more information could be gathered.

k.      At the April 21, 1998 Council meeting Sadeghian submitted a phase development plan, which the Council approved subject to corrections of minor errors in the plan.

l.      At the February 16, 1999 Council meeting — after almost a year during which Sadeghian met with the Council several times regarding his progress on phase development and compliance with City ordinances — the Council declined to renew Sadeghian's permit, which then expired in March, 1999.  The reason the City refused to renew the permit was that Sadeghian had failed to make the road and utility improvements shown in the approved park plat and phase development plan.

m.      After the permit expired, the City began issuing citations to Sadeghian for operating the Park without a permit.  Sadeghian originally pled no contest, and, after some confusion regarding the amount of the fine, Sadeghian's attorney changed his plea to guilty, and agreed to pay a total fine amount of $255.00. Sadeghian's attorney entered a plea of guilty and agreed that Sadeghian would pay the fine.  The Municipal Court Judge convicted Sadeghian of violating Ordinance No. 56 and this ruling was not appealed.  Sadeghian was found guilty of operating the Mobile Home Park without a permit in violation of Ordinance No. 56.

**n.** On August 23, 1999, the City filed its Original Petition and Application for Temporary and Permanent Injunction against Sadeghian in the 211th Denton County District Court.

**o.** In late 1999, Sadeghian moved to transfer venue to the 95th Dallas County District Court.

**p.** February 8, 2000, Sadeghian filed a counterclaim against the City.

**q.** October 24, 2000, the City filed Notice of Nonsuit of claims against Sadeghian. Sadeghian's counterclaim remained.

**r.** On November 22, 2000, the City filed its Notice of Removal to U.S. District Court.

**s.** On October 28, 2002, U.S. District Judge David C. Godbey of the Northern District of Texas, Dallas Division issued his Order[1] stating that "Sadeghian failed to raise a genuine issue of fact regarding each of his federal claims.  Therefore, Defendant's Motion for Summary Judgment is GRANTED with regard to Sadeghian's federal claims, and Sadeghian's remaining state law claims are DISMISSED WITHOUT PREJUDICE."

**t.** On February 11, 2003, Sadeghian filed Plaintiff's Original Petition in the 16th Denton County District Court making many of the same claims that were previously ruled on by the Honorable David C. Godbey.[2]

**u.** On April 10, 2003, Sadeghian served the City with Plaintiff's Original Petition.

**v.** On May 2, 2003, the City filed Defendant's Original Answer.

**w.** On May 6, 2003, the City filed this removal.

---

[1]  See October 28, 2002 ORDER attached as EXHIBIT 1.

[2]  EXHIBIT 1.

## 2.   FEDERAL QUESTION JURISDICTION

**a.**   Because Sadeghian has brought federal claims against the City — including claims under the United States Constitution and 42 U.S.C. § 1983 — this Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331.

**b.**   This action is removed to this Court, which is the District and Division where the removed action is pending.  The removal is proper under either 28 U.S.C. § 1441(a), (b) or (c).  The City is entitled to remove the entire pending action because Sadeghian has brought a separate and independent claim(s) or cause(s) of action within the jurisdiction conferred by 28 U.S.C. § 1331 against the City.

## 3.   PROCEDURAL COMPLIANCE

**a.**   In compliance with 28 U.S.C. § 1446(b), this Notice of Removal is filed within 30 days after the date that the City was served with Citation and the Plaintiff's Original Petition.

**b.**   In compliance with Local Rule CV 81, the City includes with this Notice of Removal:

1)   a list of parties in the case, their party type and current status of the removed case[3];

2)   a civil cover sheet[4];

3)   a certified copy of the state court docket sheet[5];

---

[3]   EXHIBIT 2.

[4]   EXHIBIT 3.

[5]   EXHIBIT 4.

4)      a copy of all pleadings that assert causes of action, all answers to those pleadings, and all process and orders served on the removing party[6];

5)      a list of attorneys involved in the action, including their bar numbers, address, telephone numbers and the party they represent[7];

6)      a record of which parties have requested trial by jury[8]; and

7)      the name and address of the court from which the action is removed.[9]

Respectfully submitted,

WOLFE, TIDWELL & McCOY, LLP
123 N. Crockett Street, Suite 100
Sherman, Texas   75090
903.868.1933 telephone
903.892.2397 facsimile

By: _____
Clark H. McCoy, Jr.
State Bar No. 90001803

## CERTIFICATE OF SERVICE

A copy of this document was served 6-May-03, as follows:

VIA CERTIFIED U.S. MAIL RRR 7002 0460 0002 2421 9610

Christopher J. Caso
CASO EGELSTON & ECKERT, LLP
10246 Midway Road, Suite 202
Dallas, Texas  75229

_____
Clark H. McCoy, Jr.

---

[6]    EXHIBIT 5.

[7]    EXHIBIT 6.

[8]    EXHIBIT 7.

[9]    EXHIBIT 8.



IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KHOSROW SADEGHIAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:00-CV-2561-N |
| | § | |
| CITY OF AUBREY, TEXAS, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court is Defendant's Motion for Summary Judgment.  For the reasons stated below, the Motion for Summary Judgement is GRANTED with regard to Plaintiff's federal claims and all remaining state law claims are DISMISSED WITHOUT PREJUDICE.

Khosrow Sadeghian owns land that was once used as a mobile home park in the City of Aubrey (the "City").  The City denied Sadeghian's permit application to operate the mobile home park after Sadeghian failed to add certain items to his property required under city ordinances including: paved roads, fire hydrants, and improved water lines.  Sadeghian alleges: (1) his property is a non-conforming use not required to comply with the city ordinances;[1] (2) the City's denial of the mobile home permit was an unconstitutional taking of his property; (3)  the denial was based on racial and religious discrimination; (4) the city ordinances are invalid and violated Sadeghian's substantive due process rights; and (5) the

---

[1]The ordinances are AUBREY, TEX., ORDINANCE § 56 (1968), dealing with trailer parks, and AUBREY, TEX., ZONING ORDINANCE §135-8 (1987).

EXHIBIT 1

City's enforcement of the ordinances violates the Texas Impact Fee Statute[2] and the Texas Vested Rights Statute[3].

## I. NON-CONFORMING USE

As a threshold issue, Sadeghian contends that his property is a non-conforming use under the City's ordinances so the City should not require his mobile home park to comply with the ordinances. A non-conforming use will not be recognized without sufficient evidence proving the non-conforming use's existence when the ordinance was enacted and its continued existence. *City of Carthage v. Allums,* 398 S.W.2d 799, 802 (Tex. Civ. App. – Tyler 1996, no writ). Sadeghian's contention is problematic for two reasons. First, under City of Aubrey Ordinance 56, non-conforming uses are not exempt from the ordinance's requirements. Ordinance 56 Section 2 states that "[a]ny and all trailer coach parks in existence upon the effective date of this ordinance shall within ninety (90) days thereafter obtain such license and in all other respects comply fully with the requirements of this ordinance." Therefore, according to the express language of the ordinance, even if Sadeghian could prove that the mobile home park existed before 1968 when Ordinance 56 went into effect, he would not be able to avoid compliance with its requirements. The second

---

[2]TEX. LOC. GOV'T CODE ANN. § 395 (Vernon 2001).

[3]TEX. LOC. GOV'T CODE ANN. § 245 (Vernon 1999).

ORDER – PAGE 2

problem with Sadeghian's non-conforming use claim is that he provides no evidence that the mobile home park existed before Ordinance 56 or Ordinance 135-87[4] went into effect. Sadeghian merely asserts that the mobile home park "had been there for some time" and "was in all likelihood in existence prior to the adoption of the Zoning Ordinance."[5] Aside from this speculation, he provides no documents, affidavits or other evidence proving the park's existence before either ordinance became effective. Without proof, this Court is unable to accept Sadeghian's assertion that the mobile home park should be exempt from the ordinances as a non-conforming use. Given that the ordinances facially apply to Sadeghian's mobile home park, the Court now turns to Sadeghian's attacks on the ordinances.

## II. TAKINGS CLAIM

Sadeghian first claims that requiring him to comply with Ordinance 56 and Ordinance 135-87 amounts to an unconstitutional taking of his property. Under the Takings Clause of the Fifth Amendment, which applies to states through the Fourteenth Amendment, and under

---

[4]Ordinance 135-87, which took effect in 1987, contains a provision exempting non-conforming uses from its application. Ordinance 135-87(79) defines a nonconforming use as "use of a building or land which existed previously that does not conform to the present regulations as to use for the district in which it is now situated." Section 26 of Ordinance 135-87 states the ordinance intends "to permit these nonconformites to continue until they are removed." Although non-conforming uses are exempt under Ordinance 135-87, Sadeghian must provide evidence that his mobile home park existed before the ordinance went into effect in 1987 to be exempt from the ordinance.

[5]*See* Plaintiff Khosrow Sadeghian's Brief In Opposition To Defendant's Motion For Summary Judgment, p. 4.

ORDER – PAGE 3

the Texas Constitution Article 1 Section 17,[6] a land use regulation is a taking if it denies a landowner economically viable use of his land, or it does not substantially advance a legitimate state interest. *Texas Manufactured Housing Ass'n, Inc. v. City of Nederland,* 101 F.3d 1095, 1104 (5th Cir. 1996) (citing *Agins v. City of Tiburon,* 447 U.S. 255, 260 (1980)). To determine whether an owner has been deprived of all economically viable use of his land, the Court should take into account relevant factors such as whether the regulation completely denies all beneficial use of some portion of the property and the extent to which the regulation frustrates distinct investment-backed expectations of the property owner. *Texas Manufactured Housing Ass'n, Inc.,* 101 F.3d at 1105-1106.  The determination should be case-specific and fact-intensive. *Id.*

### A. Denial of All Beneficial Use of Land

For Sadeghian to prove that he was denied all beneficial use of his property, he must provide evidence that after the ordinances were applied, his property became completely worthless or that some physical invasion occurred on his property.  Sadeghian admitted in his deposition that the property retained some value, although he was unsure about the specific numbers.[7]  Even though he discussed a few sale contracts that went astray and

---

[6]The federal takings clause is substantially similar to the Texas takings clause.  Texas courts rely on the United States' Supreme Court's interpretation of the federal takings clause when construing the state provision. *City of Austin v. Travis County Landfill Co., L.L.C.,* 73 S.W.3d 234, 238 (Tex. 2002).

[7]*See* Plaintiff Sadeghian's Depo., Appendix To Defendant's Motion for Summary Judgment p. 166  line 1 - p. 168, line 1.

speculated that no one would want to use the land commercially or residentially, he admitted the property was not completely worthless. In addition, Sadeghian does not claim that the City physically invaded his land. Therefore, because the land is not worthless without the mobile home permit and the City did not physically invade the land, one of which is required to prove Sadeghian was denied all beneficial use of his land, his taking claim fails on this point.

### B. Frustration of Investment-Backed Expectations

In order to show the ordinances frustrated Sadeghian's investment-backed expectations, he must first prove he suffered economic loss because the City denied his mobile home park permit application. To show economic loss, Sadeghian must prove the value of the land before the City denied him the permit and the income lost after the denial. In this case, Sadeghian has not provided the Court with any admissible evidence as to the value of his property before or after the the City denied him the mobile home park permit.[8] Although Sadeghian testified in deposition about his estimation of the property value, he ultimately stated that he could not give specific numbers regarding the value or the income

---

[8]The Court cannot consider the affidavit of Sadeghian's proposed expert, Mark Hipes, which discusses the value of Sadeghian's property because the Court excluded it on procedural grounds. Federal Rule of Civil Procedure 56(e) mandates courts consider only admissible evidence during summary judgment because inadmissible material "would not establish a genuine issue of material fact if offered at trial and continuing the action would be useless." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

ORDER – PAGE 5

he lost.[9]  A property owner's opinion on the value of his property is not competent evidence if it is based solely on speculative factors, as it is in this case. *King v. Ames,* 179 F.3d 370, 376 (5th Cir. 1999).  Because he is unable to prove the value of the land before and after the permit denial, Sadeghian cannot show that he lost money and therefore cannot prove his investment-backed expectations were frustrated.

In addition, even if Sadeghian could prove he lost money when the City denied his mobile home park permit, Sadeghian had constructive notice of the ordinances through the land records and should have considered their application before purchasing the land.  In Texas, an individual has constructive notice of the actual knowledge he would have acquired by examining public records. *Trail Enters, Inc. v. City of Houston,* 957 S.W.2d 625 (Tex. App. – Houston [14th Dist.] 1997, pet. denied).  Individuals residing or doing business in an area are presumed to have knowledge of the local ordinances. *Id.* Because Sadeghian had notice of the ordinances, his claim of frustrated investment expectations fails. He knew that the park needed improvements to comply with the ordinances[10] and had constructive knowledge the ordinances existed, so he cannot now argue that the City's application of the ordinances frustrated his investment expectations.

---

[9]Plaintiff Sadeghian's Depo., Appendix To Defendant's Motion for Summary Judgment p. 166 line 1 - p. 168, line 1.

[10]Plaintiff Sadeghian Depo., Appendix  To Defendant's Motion for Summary Judgment  p. 135 lines 8-19.

ORDER – PAGE 6

### C. Action Fails to Substantially Advance a Legitimate State Interest

Along with the denial of economically viable use of land, unconstitutional takings may occur when the government's action does not substantially advances a legitimate state interest. *Texas Manufactured Housing Ass'n, Inc.,* 101 F.3d at 1104.  The City argues that the ordinances' requirements for paved streets, fire hydrants and improved water lines substantially advance the legitimate state interests of improving public health and safety. Sadeghian does not offer evidence that the ordinances fail to advance the legitimate state interests mentioned by the City.  Because the ordinances substantially advance the legitimate state interests of improving safety and public health, Sadeghian's takings claim fails. Sadeghian failed to raise a genuine issue of fact concerning any element of the claim upon which judgment is being sought regarding the takings claim, summary judgment is appropriate. *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1195 (5th Cir. 1986).

### IV. Equal Protection Claim

Sadeghian claims that The City discriminated against him because of his race and religion in violation of the equal protection clause of the Fourteenth Amendment of the United States Constitution.  It appears Sadeghian is asserting that the City of Aubrey selectively enforced its ordinances against him because of his religion and race.  In a selective enforcement context, a denial of equal protection has not occurred unless the government intentionally or purposefully discriminated. *Pope v. Miss. Real Estate Com'n,* 695 F. Supp. 253, 286 (N.D. Miss. 1988) (citing *Snowden v. Hughes,* 321 U.S. 1, 8 (1944)); *see also*

*Peacock v. City of Seagoville,* 2001 WL 1057408 (N.D. Tex 2001). In this case, Sadeghian did not produce any competent evidence of purposeful discrimination by the City.

Sadeghian alleges that the City provided money to another subdivision, Thistletown, to pave its roads while refusing to provide him financial assistance to pave the roads on his property. According to the City, the two situations differ because Thistletown's roads are public property while the roads on Sadeghian's land are private. The City has an obligation to help maintain public roads, but the same obligation does not extend to private ones. Sadeghian's response that his roads are public fails because he provided no evidence that when the previous owners granted the City an easement on the roads, the City accepted the dedication. Because acceptance by the municipality is an essential element of a dedication and the City did not accept the easement, Sadeghian's roads remain private. *Machala v. Weems,* 56 S.W.3d 748, 757 (Tex. App. – Texarkana, 2001, pet. denied). Because Thistletown subdivision's road are public, it was not arbitrary for the City to fund the paving of those roads while refusing to fund the paving of Sadeghian's private roads. This action by the City does not support Sadeghian's arbitrary enforcement equal protection claim.

The only other evidence Sadeghian provides to support his selective enforcement claim is the fact that many of the residents of his mobile home park are minorities and a description of two hearsay conversations. The fact that many of the residents are minorities alone does not provide sufficient evidence that the City purposefully discriminated against Sadeghian. He provided no evidence that the City ever considered the race of the residents of his park when making decisions about the park. Also, hearsay-within-hearsay statements where

ORDER – PAGE 8

Sadeghian overheard someone who said she overheard the former mayor make off-color remarks about Sadeghian will not be admissible evidence at trial and cannot be considered on summary judgment. *Celotex Corp.,* 477 U.S. at 324. Again, Sadeghian did not produce sufficient evidence to create a genuine issue of fact regarding purposeful discrimination by the City to prevent summary judgment. Therefore, the City is entitled to judgment as a matter of law on Sadeghian's equal protection claim.

## V. DUE PROCESS CLAIM

Sadeghian challenges the City's ordinances on the grounds that they are arbitrary and capricious, which is a substantive due process claim under the Fourteenth Amendment. Zoning ordinances are presumed valid and should be upheld unless their impact on the usage of land denies the landowner fairness and justice guaranteed by the Constitution. *Schafer v. City of New Orleans,* 743 F.2d 1086, 1089-90 (5th Cir. 1984).

The rational basis test, which requires only that the ordinances be rationally related to a legitimate government purpose, should be applied in this case. *Id.* In the face of the presumption of validity, Sadeghian offered no evidence that the ordinances were not rationally related to the legitimate government purposes of promoting safety, health, welfare for the citizens of Aubrey. Sadeghian failed to provide sufficient evidence to create a genuine issue of fact to prevent summary judgement on his due process claim. Therefore, the City is entitled to judgment as a matter of law on Sadeghian's substantive due process claim.

## VI. Texas Impact Fee Statute and Texas Vested Rights Statute Claims

28 U.S.C. § 1367 permits federal courts to exercise supplemental jurisdiction over pendent state claims. Whether to exercise such jurisdiction after dismissing the underlying federal claims is a matter left to the sound discretion of the court. *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir. 1998). This Court declines to exercise jurisdiction over the Sadeghian's remaining state law claims. Sadeghian's remaining state law claims therefore are dismissed without prejudice.

## VII. Conclusion

Sadeghian failed to raise a genuine issue of fact regarding each of his federal claims. Therefore, Defendant's Motion for Summary Judgment is GRANTED with regard to Sadeghian's federal claims, and Sadeghian's remaining state law claims are DISMISSED WITHOUT PREJUDICE.

SIGNED this _____ 28 _____ day of October, 2002.

David C. Godbey
United States District Judge

ORDER – PAGE 10

## LIST OF PARTIES

KHOSROW SADEGHAIN, Plaintiff

CITY OF AUBREY, TEXAS, Defendant

This case is currently pending in the 16th District Court of Denton County, Texas.

**EXHIBIT 2**

JS 44  (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
KHOSROW SADEGHIAN

## DEFENDANTS
CITY OF AUBREY, TEXAS

(b) County of Residence of First **DENTON**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed  **DENTON**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Christopher J. Caso
CASO EGELSTON & ECKERT, LLP
10246 Midway Road, Suite 202
Dallas, Texas 75229
214.351.4121

Attorneys (If Known)
Clark H. McCoy, Jr.
WOLFE, TIDWELL & McCOY, LLP
123 N Crockett St., Suite 100
Sherman, Texas 75090
903.868.1933

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- X  3  Federal Question (U.S. Government Not a Party)
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PLF | DEF | | DEF |
|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410 |
| **PERSONAL INJURY** ☐ 362 Personal Injury— Med. Malpractice<br>☐ 365 Personal Injury— Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability | **PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | | | |
| | **PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt.Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **FEDERAL TAX SUITS** | |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>X 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence<br>Habeas Corpus:<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | ☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1  Original Proceeding
- X  2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
42 U.S.C. §1983, PLAINTIFF ALLEGES AN UNCONSTITUTIONAL TAKING.

**EXHIBIT 3**

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:   X Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE
DOCKET NUMBER

DATE  5-6-03

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUN          APPLYING IFP          JUDGE          MAG. JUDGE

# DOCKET

Atty. for Plaintiff _____

_____

Atty. for Defendant _____

_____

Jury fee: _____ Date Pd. _____

Pd. by _____

| Date of Orders | ORDERS OF COURT | Minute Book | |
|---|---|---|---|
| | | Vol. | Page |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

AMES COLOR-FILE



CERTIFIED A TRUE AND CORRECT COPY
SHERRI ADELSTEIN
DENTON COUNTY DISTRICT CLERK

DEPUTY

**EXHIBIT 4**

CASO EGELSTON & ECKERT, L.L.P.
ATTORNEYS AND COUNSELORS
10246 MIDWAY ROAD · SUITE 202
DALLAS, TEXAS 75229

TELEPHONE (214) 351-4121

FILED

03 FEB TELECOPIER (214) 351-9666
SHERRI ADELSTEIN
DISTRICT CLERK DENTON CO., TX

BY _____ DEPUTY

February 8, 2003

Sherri Adelstein, District Clerk
1450 E. McKinney
Denton, Texas 76201-4524

    *RE:*   *Sadeghian v. City of Aubrey*

Dear Ms Adelstein:

    Enclosed please find Plaintiff's Original Petition in the case along with the filing fee check for $200.00.  Please file the original Petition in this case.  I will not need service at this time.

    I appreciate your assistance in this regard and please do not hesitate to call if you have any questions.

               Sincerely,

               Christopher J. Caso

Enclosures

CERTIFIED A TRUE AND CORRECT COPY
SHERRI ADELSTEIN
DENTON COUNTY DISTRICT CLERK
_____ DEPUTY

**EXHIBIT 5**

FILED

CAUSE NO. 2003-10035-16   03 FEB 11 PH 1: 39

SHERRI ADELSTEIN
DISTRICT CLERK DENTON CO., TX

| | | |
|---|---|---|
| KHOSROW SADEGHIAN, | } | IN THE DISTRICT COURT |
| PLAINTIFF | } | |
| | } | |
| V. | } | 16 JUDICIAL DISTRICT |
| | } | |
| CITY OF AUBREY, TEXAS, | } | |
| DEFENDANT | } | DENTON COUNTY, TEXAS |

BY _____ DEPUTY

## PLAINTIFF'S ORIGINAL PETITION

TO THE JUDGE OF THE HONORABLE COURT:

COMES NOW, Plaintiff, Khosrow Sadeghian ("Sadeghian") complaining of Defendant, City of Aubrey, Texas ("City" or "Aubrey") and for cause of action, would respectfully show the Court as follows:

## I.
## PARTIES AND DISCOVERY CONTROL PLAN

Sadeghian is an individual residing in Denton County, Texas. Sadeghian pleads that discovery should be conducted in accordance with a discovery control plan under Texas Rules of Civil Procedure, Rule 190.3.

Defendant is a municipality which is located in Denton County, Texas.

Venue and jurisdiction are proper in Denton County, Texas, in that Denton County is where the parties reside and where the real property that is the subject of this suit is located.

1

## II.
## FACTS

Plaintiff Sadeghian reincorporates and realleges the allegations contained in Paragraph I herein for all purposes.

On or about June 4, 1968, the City adopted a trailer coach ordinance which has been designated Ordinance No. 56 . The City has asserted that it is this ordinance which owners of mobile home parks within the City must comply.

On or about April 14, 1987 the City adopted its Zoning Ordinance, which has been designated Ordinance No. 135-87. The only provision of the Zoning Ordinance that has been reproduced is Section 19, which contains the requirements for the Mobile Home Park zoning district.

Sadeghian purchased the real property that was known as the Wilson Mobile Home Park in 1997. The Wilson Mobile Home Park was an operating mobile home park within the City of Aubrey as evidenced by the correspondence from the City acknowledging the operation of the Park. The Wilson Mobile Home Park was renamed the Aubrey Family Mobile Home Park after it was acquired by Sadeghian and is referred to herein as the "Park".

On June 15, 1992, the Aubrey Chief of Police sent Mr. Wilson, the owner of the Wilson Mobile Home Park, a list of violations for the Aubrey Family Mobile Home Park, however, nothing in the letter indicates that it included the failure to file a subdivision plat for the Property or to make costly capital improvements to the Park.

The Park has been operating within the City for quite some time, however, it is uncertain exactly how long the Park has been in existence . On January 6, 1993, the Aubrey Chief of Police sent a letter to Mr. Thomas Wilson, the manager/owner of the Wilson Mobile Home Park,

advising him of certain violations at the Park.   However, the letter mentions nothing of the property owner having to submit a subdivision plat or to make costly improvements in order to continue the operation of the Park.

On September 24, 1996, the City sent Mr. Wilson a letter enclosing "copies of two ordinances that currently affect your application to operate a mobile home park in the City limits of the City of Aubrey, Texas".   The letter does not state which ordinances are being referred to nor is there a copy of the two ordinances attached to the letter.

On April 21, 1998 the Aubrey City Council at its regular meeting approved the plat which required Sadeghian to make costly improvements to the Park.  It is unclear as to why the City was considering the phased development of the Park because it was already an existing park which had been established and was operating under the City's ordinances .

The City has required Mr. Sadeghian to pave certain streets in and around the Park despite the fact that the City's own maps showed that the streets in question were City streets, by virtue of  a copy of a map, produced by the City of Aubrey, showing the following streets within the City: Alameda Street, Wilson Street, Union Street, Bruce Street, Dane Street and Blackjack Road.

Mr. Sadeghian obtained a mobile home park permit from the City which states that "Applicant hereby certifies that all park conditions at this time comply with all current City Ordinances and Regulations.  It was signed by the then Mayor of Aubrey on March 2, 1998.

In attempt to clear up confusion on the City's part, on February 13, 1997, Mrs. Wilson, the owner of the Mobile Home Park wrote the City of Aubrey a letter with the following information:

3

> Since we bought an ongoing business a plat was never required and
> therefor [sic] we thought you wanted a signed and sealed copy of
> the survey given us at purchase.
>
> By the way the definition of 'plat' is not in the ordinances either.

The City then instituted litigation in Texas state court to enjoin Sadeghian from the

operation of the Park..   In its Original Petition in the state court action, the City alleged as

follows:

> At all relevant times, Sadeghian has been operating the property as a
> mobile home park by leasing spaces to individuals for residential
> occupancy of mobile homes, and collecting rents from his tenants
>
> Aubrey has two ordinances which govern the operation of mobile
> home parks. They are Ordinance 135-87 and Ordinance 56, which
> have been enacted and are in effect at all relevant times herein.
>
> The ordinances set out the requirements for owning and operating a
> mobile home park within the city limits of Aubrey.

## III.
## THE CITY WAS NOT AUTHORIZED IN REQUIRING SADEGHIAN TO SUBMIT A PLAT SINCE HE WAS NOT SUBDIVIDING LAND.

Sadeghian realleges and reincorporates Paragraphs I-II, herein for all purposes.

Before Sadeghian was permitted to obtain a mobile home park license, he was required to

file a subdivision plat for the park.. This requirement was unauthorized and unconstitutional.

Section 212.004 of the Texas Local Government Code controls the requirement of

providing a subdivision plat. It provides, in pertinent part, as follows:

### Section 212.004          Plat Required

(a)     The owner of a tract of land located within the limits or in the extraterritorial
jurisdiction of a municipality who divides the tract in two or more parts to lay out
a subdivision of the tract, . . . must have a plat of the subdivision prepared.
(emphasis added).

4

Sadeghian did not divide the Park into two ore more parts, he simply acquired the Park at an auction.  Since Sadeghian did not subdivide the land, the City should not have withheld the granting of the mobile home park license, and the requirement to construct the costly improvements, and it was unlawful and unconstitutional for the City to deny such license.

As conditions to development approvals (such as building permits or subdivision plats) municipalities have traditionally required developers to dedicate land and/or to construct and dedicate capital improvements such as offsite roads, park improvements, and water, sewer and drainage facilities.  In many instances, developers are offered pro-rata cost sharing arrangements for some of these "exactions," such as construction of water and sewer lines, which benefit the public in general and not just the developer's project.  In some instances, however developers are required to bear 100% of the costs to construct and dedicate the offsite capital improvements, even where the general public is the beneficiary of the improvements.  By utilizing development exactions, municipalities have obtained public facilities or improvements by shifting the entire burden to only a few property owners.

The United States Supreme Court has declared this type of development exaction to be unconstitutional because the exaction has the effect of taking private property for public use without compensation.  See *Nollan v. California Coastal Comm'n*, 483 U.S.825 (1987); *Dolan v. City of Tigard*, 512 U.S. 374 (1994).  A review of each case shows that the development exactions required by the City constituted and uncompensated taking under both the U.S. and Texas constitutions.

The United States Constitution provides a "floor" or "federal safety net" for rights below which the State Constitution may not drop and thus, the "takings clause" of the Texas

Constitution must offer at least the same protections guaranteed by the United States Constitution. *In the Interest of JWT, a Minor Child*, 872 S.W.2d 189, 207 (Tex.1994); *Davenport v. Garcia*, 834 S.W.2d 4, 15 (Tex. 1992); *Lucas v. U.S.*, 757 S.W.2d 687, 692 (Tex.1988); *LeCroy v. Hunlon*, 731 S.W.2d 335, 338 (Tex. 1986).

Real property and personal property fall within the protection of both the Fifth Amendment to the U. S. Constitution and Article I, Section 17 of the Texas Constitution. See, *Lynch v. United States*, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434; *King v. United States*, 427 F.2d 767, 769 (U.S. Ct. Claims 1970) (U.S. Constitution); Also see, *City of Waco v. Roberts*, 121 Tex. 217, 48 S.W.2d 577, 578-9 (1932); *Skeen v. State of Texas*, 550 S.W.2d 713, 715 (Tex. Civ. App.—Waco 1977, r.n.r.e.); *Renault, Inc. v. City of Houston*, 415 S.W.2d 948, 952 (Tex. Civ. App.—Waco 1967) rev'd on other grounds, 431 S.W.2d 322 (Tex. 1968); (Texas Constitution).

## IV.

### THE CITY'S REQUIREMENT FOR SADEGHIAN TO INSTALL A NEW WATER SEWER LINE THAT WAS TO SERVE OTHER PROPERTY OWNERS WAS A CAPITAL IMPACT FEE THAT WAS NOT ADOPTED IN ACCORDANCE WITH THE STATE'S CAPITAL IMPACT FEE STATUTE AND WAS THEREFORE, UNLAWFUL AND UNCONSTITUTIONAL.

Sadeghian realleges and reincorporates Paragraphs I-III, herein for all purposes.

Realizing that municipalities were improperly requiring developers to fund capital improvements that were to benefit other properties, the Texas Legislature adopted what is known as the Capital Impact Fee Statute, which is codified at Chapter 395 of the Texas Local Government Code.

6

Section 395.011 of the Code addresses when a municipality may adopt a capital impact fee, and it provides as follows:

### Section 395.011    Authorization of Fee

(a)    Unless otherwise specifically authorized by state law in this chapter, a governmental entity or political subdivision <u>may not enact or impose an impact fee.</u>

(b)    Political subdivisions may enact or impose impact fees on land within their corporate boundaries or extraterritorial jurisdictions <u>only by complying with this chapter</u>. . . . (emphasis added).

The City has not complied with Chapter 395 of the Texas Local Government Code, as required by Section 395.011 and is prohibited from requiring Sadeghian to make costly capital improvements. The City is required to adopt a capital improvements plan pursuant to Section 395.014 of the Code--which it has not done; it is required to conduct hearings on land use assumptions pursuant to Section 395.042 of the Code--which it has not done; it is required to adopt land use assumptions pursuant to Section 395.045--which it has not done; it is required to conduct public hearings in the capital improvements plan and impact fees pursuant to Section 395.049 of the Code--which it has not done. In short, it has done nothing to adopt a capital impact fee such that it would be permissible to require Sadeghian to make the Improvements.

The Code defines an "impact fee" in Section 395.001 of the Code, as follows:

(4)    "Impact Fee" means a charge or assessment imposed by a political subdivision against <u>new development</u> in order to generate revenue for funding or recouping cost of capital improvements or facility expansions <u>necessitated by and attributable to the new development</u>. . .(emphasis added).

As the record clearly shows, Sadeghian was not establishing a new mobile home park, but was simply trying to continue a mobile home park that was in existence for many years.

7

A "capital improvement" is defined by the Code as follows:

(1)    "Capital improvement" means any of the following facilities that have a life expectancy of three or more years and are owned and operated by or on behalf of a political subdivision:

    (a)    water supply, treatment and distributions facilities. . .
    (b)    roadway facilities . . .

The Code also describes certain items that may not be recoverable through a capital

impact fee. Section 395.013 provides, in pertinent part, as follows:

**Section 395.013    Items Not Payable By Fee**

Impact fees may not be adopted or used to pay for:

…

(2)    Repair, operation, or maintenance of <u>existing</u> or new capital improvements or facility expansions;

(3)    <u>Upgrading, updating, expanding, or replacing existing capital improvements to serve existing development</u> in order to meet stricter safety, efficiency, environmental, or regulatory standards;

(4)    Upgrading, updating, expanding, or replacing <u>existing capital improvements</u> to provide better service to existing development. (emphasis added).

The  City was prohibited from requiring Sadeghian to construct water, sewer, and

roadway facilities because they have failed to adopt a capital impact fee as required by Texas

law.

The City of Aubrey, being less than 5,000 population, is referred to as a general law

municipality. See Chapter 5, Texas Local Government Code. As a general law municipality, the

City must look to the Legislature for a grant of power and has no power of self-government.

Therefore, everything a City does, it must have some basis in state law for such action.

8

## V.

## SADEGHIAN HAS A VESTED RIGHT TO CONTINUE THE OPERATION OF THE PARK BY VIRTUE OF THE TEXAS VESTED RIGHTS STATUTE AND ANY ATTEMPT BY THE CITY TO DEFEAT THAT RIGHT IS UNLAWFUL AND UNCONSTITUTIONAL.

Sadeghian realleges and reincorporates Paragraphs I-IV, herein for all purposes.

Sadeghian has a vested right to continue the operation of the Park as outlined in the Texas Vested Rights Statute which is codified at Section 481.141 et seq., of the Texas Government Code, which provides, in pertinent part, as follows:

**Section 481.143        Uniformity of Requirements**

(a)    The approval, disapproval, or conditional approval of an application for a permit shall be considered by each regulatory agency solely on the basis of any orders, regulations, ordinances, rules, expiration dates, or other duly adopted requirements in effect at the time the original application for the first permit in that series is filed shall be the sole basis for consideration of all subsequent permits required for the completion of the project, and all permits required for the project shall be considered to be a single series of permits.

This statute "locks in" the applicable ordinances and regulations in effect at the time when the application was initially made.

The City's attempt to require Sadeghian to make expensive capital improvements to the Park, which were not required of the previous owner, cannot be demanded from Sadeghian. Additionally, the City's attorneys have stated in their petition in state court, that the only ordinances applicable to the operation of the mobile home park was the mobile home park ordinance (trailor coach ordinance) and the City's zoning ordinance. The expensive capital improvements that Sadeghian is expected to make are not within either one of the ordinances.

# VI.

## THE OPERATION OF THE PARK WAS A NON-CONFORMING USE AND ANY ATTEMPT TO PREVENT SUCH USE BASED ON THE CITY'S ZONING ORDINANCE IS UNLAWFUL AND UNCONSTITUTIONAL.

Sadeghian realleges and reincorporates Paragraphs I-V, herein for all purposes.

Cities can establish zoning districts under their general police power to protect the public heath, safety, and general welfare. *City of Corpus Christi v. Allen*, 254 S.W. 2d 759, 71 (Tex. 1953) Such restrictions, however, may not be made retroactive; rather they:

> must relate to the future rather than to existing buildings and uses of land, and ordinances may not operate to remove existing buildings and uses not in conformity with the restrictions applicable to the district, at least where such buildings and uses are not nuisances and their removal is not justified as promoting public heath, morals, safety or welfare.

Id. at 761 (citations omitted) (wrecking yard in light industrial district not nuisance nor harmful to public safety and welfare; therefore, compulsion to cease operation constituted taking). See also, *Carthage v. Allums*, 398 S.W. 2d 799 (Tex. Civ. App.-Tyler 1966, no writ) (no retroactive application).

"A non-conforming use of land or buildings is a use that existed legally when the zoning restriction became effective and has continued to exits." *City of University Park v. Benners*, 485 S.W. 2d 773, 777 (Tex. 1972), app. dism'd, 411 U.S. 901, reh'g denied, 411 U.S. 977 (1973); *Town of Highland Village v. Marshall,* 235 S.W. 2d 658, 662-63 (Tex. Civ. App. – Dallas 1950, writ ref'd n.r.e.) (the use of a garage apartment pre-dated the zoning ordinance; therefore, although the garage apartment violated the single-family district regulations, the privileged status or exemption applied). In other words, non-conforming status is attributable to a use or structure when:

(1)    such use or structure was constructed or operational prior to
      (a)    the annexation of such property into the municipality, or
      (b)    the adoption or amendment of the zoning ordinance; and

(2)    the non-conforming use or structure has continued to exits without subsequent abandonment.

The use must be lawful at the time the ordinance is passed. Further, it must be the same use and not a use of some other kind. *City of Dallas v. Fifley,* 359 S.W. 2d 177, 181-82 (Tex. Civ. App.- Dallas 1962, writ ref'd n.r.e.).

The right to continue a non-conforming use has its genesis in federal and state constitutional provisions that prohibit the unconstitutional taking of property without just compensation and due process of law. *Eckert v. Jacobs*, 142 S.W. 2d 374, 378 (Tex. Civ. App-Austin 1940, no writ). Additionally, the exemption for pre-existing non-conforming uses protects an owner's investment in property.

This "essential nexus" requirement was refined in the case of *Dolan v. City of Tigard.* Ms. Dolan operated a store that had a gravel parking lot. A creek traversed part of her property. Ms. Dolan applied for a permit to increase the size of her store and pave the parking lot. The city refused the permit unless Ms. Dolan dedicated the creek for use as a flood control area and granted an additional 15 foot strip of land adjacent to the creek as a bicycle path. Ms. Dolan complained on appeal that the city had not identified any "special quantifiable burdens" created by her new parking lot or building that would justify the particular exactions from her.

In addressing the issue, the United States Supreme Court framed the following question: "What is the required degree of connection between the exactions imposed by the city and the projected impacts of the proposed development." The Court answered the question by stating the governing law applicable to this case:

> We think a term such a 'rough proportionality' best encapsulates
> What we hold to be the requirement of the Fifth Amendment.  No
> Precise mathematical calculation is required, but the city must make
> some sort of individualized determination that the required
> dedication is related both in nature and extent to the impact of the
> proposed development.

These two cases, *Nollan* and *Dolan*, represent the law controlling the disposition of this motion for partial summary judgment. The United States and Texas Constitutions provide that private property cannot be taken for public use without just compensation. U.S. CONST. Amen. V; TX. CONST. Art 1, §17.  Over the years, local governments have used their power of eminent domain to "appropriate" property utilizing various schemes and artifices which they hoped would avoid their Constitutional obligation to compensate the property owner.  One such method was to require an exaction (land, easements, construction, dedications, etc) from a property owner who was seeking a permit or plat approval.  If the property owner refused the exaction, he got no permit or approval.  This became known as "plat-mail" because of its similarity to "black-mail" in that the exaction requirement is made at a time when the developer is financially committed to the project and has no choice.

Read together, *Nollan* and *Dolan* establish a two-part test.  First, the Court asks whether the government imposition of the exaction would constitute a taking if done without the corresponding application for a permit by the landowner.  Second, is application of the "rough proportionality" test which asks whether the exaction demanded is roughly proportional to the government's legitimate interest.

The first inquiry ignores the government's land use power, and asks only whether

Government imposition of the exaction would be a taking.  In *Nollan*, the Court addressed the

first inquiry, explaining:

> Had California simply required the Nollans to make an easement across
> their beachfront available to the public on a permanent basis in order to
> Increase public access to the beach, rather than conditioning their permit to build
> their house on their agreeing to do so, we have no doubt there would have been a
> taking.

The Court began with this analysis in *Dolan* as well.  The Court had no trouble in ether

case finding that the exaction, standing alone, would have been a taking.

In our case, the City required Sadeghian to improve a public road and to make capital

improvements that were to be utilized by property owners other than Sadeghian.     Standing

alone, this exaction constitutes a taking.  See, *Haynes v. City of Abilene*, 659 S.W.2d 638-641

(Tex. 1983); *City of Houston v. Blackbird*, 394 S.W.2d 159,163 (Tex. 1965).   Thus, the first

element is established as a matter of law, and is not in dispute at all.

The second inquiry is a refinement of the "essential nexus" test announced in *Nollan*.

The Supreme Court explained that the exaction must be related to the burdens imposed by the

development.  In *Dolan*, the Court announced the "rough proportionality" test:

> No precise mathematical calculation is required, but the city
> must make some sort of individualized determination that
> the required dedication is related in both nature and extent to
> impact of the proposed development.

In *Dolan*, the Court began with the flood control dedication.  The Court recognized that paving

the parking lot could add to the water run-off; however, the Court found that the City of Tigard's

exaction was not roughly proportional to its flood control measure because the City could have

accomplished the same goal with a less invasive measure.  The "rough proportionality" test

ensures that the "price" of the government permit is not significantly higher than the social harm

13

caused by the proposed development. If there is no "individualized determination" as to the "price" of the exaction versus the impact of the development, then the city has acted in an unconstitutional manner. In *Dolan*, the City was required to compensate the land owner for the exaction, at least in proportion to the impact.

In our case, the City has not produced any evidence that a determination was made with respect to the impact of Plaintiff's development upon the traffic using the public streets, or the impact of bringing back the homes that the City forced Sadeghian to remove from the property would have had on the water and sewer systems as required by both the Texas and federal Constitutions. In fact, unlike the facts in the Nolan and Dolan cases, Sadeghian was not building a new project but was simply trying to continue the operation of a development that had already been in existence. Thus, applying the clear dictates of *Dolan*, the City is liable to Plaintiff for a taking of its property without compensation, and judgment as to liability is in order.

## VII.
## ATTORNEY'S FEES

Sadeghian realleges and reincorporates Paragraphs I-VI, herein for all purposes.

Sadeghian has made due written demand but has not been paid for his damages. Sadeghian has been forced to hire an attorney and has waited for all due periods required by statute. Sadeghian is entitled to recover attorney's fees in a reasonable and necessary amount. The services for which such fees would be recoverable would include, but not necessarily be limited to, those rendered in connection with the preparation and trial of this lawsuit; post-trial, pre-appeal services; responding to any appeal to the court of appeals; making or responding to any petition for review by the Texas Supreme Court; making or responding to any appeal to that court the vent of the granting of any such petition; and post-judgment discovery and collection in the event of execution on or other collection of the judgment, should it become necessary. Sadeghian would be entitled to an additional $35,000.00 of reasonable attorneys fees in the event

of an appeal to the Court of Appeals with plaintiff prevailing and to an additional $50,000.00 of reasonable attorneys fees in the event of a further appeal to the U.S. Supreme Court with Plaintiff there prevailing.

## VIII.

## INTEREST AND COSTS

Sadeghian realleges and reincorporates Paragraphs I-V, herein for all purposes.

Sadeghian requests an award of prejudgment interest, post judgment interest and costs.

## IX.

## JURY DEMAND

Sadeghian specifically requests a trial by jury.

**WHEREFORE**, Sadeghian requests that Defendant be cited to appear and answer, and that on final trial, Sadeghian have the following:

1.  Judgment for damages against Defendant, jointly and severally, for a sum within the minimum jurisdiction of this Court;

2.  Judgment that Sadeghian is entitled to utilze the Property as a mobile home park in the same manner as it was operated prior to the time he acquired it.

3.  Judgment against Defendant, for reasonable attorneys fees;

4.  Prejudgment interest as provided by law;

5.  Postjudgment interest as provided by law;

6.  Costs of suit and such other and further relief, at law or in equity, to which Sadeghian may be justly entitled.

Respectfully submitted,

CASO EGELSTON & ECKERT, LLP
10246 Midway Road, Suite 202
Dallas, Texas  75229
(214) 351-4121 (Telephone)
(214) 351-0466 (Telecopy)

CHRISTOPHER J. CASO
State Bar No. 03969230

ATTORNEYS FOR PLAINTIFF



CERTIFIED A TRUE AND CORRECT COPY
SHERRI ADELSTEIN
DENTON COUNTY DISTRICT CLERK
Teresa Lopez
DEPUTY

16

CASO EGELSTON & ECKERT, L.L.P.
ATTORNEYS AND COUNSELORS
10246 MIDWAY ROAD · SUITE 202
DALLAS, TEXAS 75229

TELEPHONE (214) 351-4121                                    TELECOPIER (214) 351-0466

March 28, 2003

Jennifer Zaha,
Deputy District Clerk
1450 E. McKinney
Denton, Texas 76201-4524

        RE:    *Sadeghian v. City of Aubrey*

Dear Ms. Zaha:

        Enclosed please find a self-addressed stamped envelope for returning the citation in the above-referenced matter.

        I appreciate your assistance in this regard and please do not hesitate to call if you have any questions.

                                        Sincerely,

                                        Christopher L. Caso

Enclosure

CERTIFIED A TRUE AND CORRECT COPY
SHERRI ADELSTEIN
DENTON COUNTY DISTRICT CLERK
DEPUTY

THE STATE OF TEXAS                                                          CIVIL CITATION
COUNTY OF DENTON          **CAUSE NO.  2003-10035-16**

TO:  **CITY OF AUBREY,  By Serving: Jason Pierce, Mayor, City Hall, 107 S. Main Street, Aubrey, Tx 76227**
(or  wherever (s)he may be found)
Notice to defendant: You have been sued. You may employ an attorney. If you or your attorney do not file a written
answer with the clerk who issued this citation by 10:00AM  on the Monday next  following  the expiration of twenty
days after you were served this citation and petition, a default judgment may be taken against you.

| | |
|---|---|
| COURT: | **16th Judicial District Court** |
| | 1450 E. McKinney, 3RD Floor |
| | Denton, Texas 76209 |
| CAUSE NO: | **2003-10035-16** |
| DATE OF FILING: | 11TH DAY OF FEBRUARY, 2003 |
| DOCUMENT: | PLAINTIFF'S ORIGINAL PETITION |
| PARTIES IN SUIT: | |
| PLAINTIFFS: | KHOSROW SADEGHIAN, |
| DEFENDANTS: | CITY OF AUBREY, |
| CLERK: | Sherri Adelstein, District Clerk |
| | 1450 E. McKinney, 1st Floor, P.O. Box 2146 |
| | Denton, Texas 76202 |
| PARTY OR: | CASO, CHRISTOPHER |
| PARTYS': | 10246 MIDWAY RD |
| ATTORNEY: | SUITE 202 |
| | DALLAS, TX 75229 |

Issued and given under my hand and seal of this said court, this March 19, 2003.
Sherri Adelstein, District Clerk
Denton, Denton County, Texas

BY: _____
deputy JENNIFER ZAHA

---

**OFFICER'S RETURN**
Came to hand on the _____ day of _____, 20_____, at _____m., and executed on the _____ day of
_____, 20_____, at _____ M by delivering to the within named _____
_____ in person a true copy of this citation, with attached copy(ies) of the,
PLAINTIFF'S ORIGINAL PETITION *at
_____

Service fees:  $_____                              _____  Sheriff/Constable
                                                     _____  County, Texas
                                                     _____
                                                     Deputy/Authorized Person
Denton County I.D. No. _____

**VERIFICATION**
     On  this day personally appeared _____ known to  me to be the person whose name is
subscribed on the foregoing instrument and who has stated: upon penalty of perjury, I attest that the foregoing instrument
has  been  executed by me in this cause pursuant to the Texas Rules of Civil Procedure.  I am over the age of eighteen years and I
am not a party to  or interested in the outcome of this suit and have been authorized by the Denton County Courts to serve process
for Denton County.
     Subscribed and sworn to before me on this the _____ day of_____, 20___

_____ Notary Public

CERTIFIED A TRUE AND CORRECT COPY
SHERRI ADELSTEIN
DENTON COUNTY DISTRICT CLERK
_____ DEPUTY



CAUSE NO. 2003-10035-16

| | | |
|---|---|---|
| KHOSROW SADEGHIAN, PLAINTIFF | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | 16TH JUDICIAL DISTRICT |
| | § | |
| THE CITY OF AUBREY, TEXAS, | § | |
| DEFENDANTS | § | DENTON COUNTY, TEXAS |

## DEFENDANT'S ORIGINAL ANSWER

Defendant, City of Aubrey, Texas, files its Original Answer in response to Plaintiff's Original Petition ("the Petition").

## 1.   SPECIAL EXCEPTIONS

a.    Defendant specially excepts to the Petition in general because Plaintiff has failed to state a claim upon which relief can be granted.

b.    Defendant specially excepts to the Petition in general and to the prayer to the extent that the maximum amount of damages claimed by Plaintiff is not pled.  Under T.R.C.P. 47, Plaintiff is required to amend, specifying the maximum amount of damages claimed from Defendant.

c.    Defendant specially excepts because Plaintiff has not alleged a clear and unambiguous waiver of sovereign immunity from suit or liability.  Plaintiff's purported claims against Defendant do not state a cause of action against a municipality recognized by the law of Texas, thus failing to invoke this Court's jurisdiction. Specifically, Plaintiff fails to allege that the Texas Legislature has waived, either by statute or written consent, Defendant's sovereign immunity from suit or liability.  The Court should order Plaintiff to amend and plead the statutory citation, including Title, Chapter, and Section number(s), if any, that expressly waive Defendant's immunity from

suit or liability, and to what extent Defendant's immunity is waived.  Included should be the legal theories, and citations to the laws, statutes, or constitutional provisions upon which Plaintiff is relying.

## 2.    GENERAL DENIAL

In accordance with T.R.C.P. 92, Defendant generally denies all material factual and legal allegations contained in the pleadings of any of the parties relevant to any claim against Defendant, and demands strict proof by preponderance of the evidence and decision by a jury.

## 3.    AFFIRMATIVE DEFENSES & OTHER PLEADINGS

**a.**    Plaintiff has failed to state a claim upon which relief can be granted.

**b.**    Plaintiff's claims are barred under the doctrine of *res judicata*.

**c.**    Plaintiff's claims are barred by collateral estoppel.

**d.**    Plaintiff's claims are barred by statute of limitations.

**e.**    Defendant is a municipality and is immune from suit and liability, absent express waiver of immunity under the Texas Tort Claims Act.  Plaintiff has failed to plead facts supporting any waiver of immunity.  In the event that immunity is waived, in whole or in part, by the Texas Tort Claims Act as to any claim of Plaintiff, then Defendant is entitled to the protection, limitations and defenses set out in the Texas Tort Claims Act.

**f.**    Defendant asserts that it cannot be liable to Plaintiff for exemplary damages as matter of law pursuant to 42 U.S.C. § 1983 because exemplary damages are not recoverable in an action brought against a governmental entity under 42 U.S.C. § 1983.

**g.**     Defendant asserts that its zoning ordinance substantially advances legitimate governmental interests seeking to:  (1) lessen congestion in the streets; (2) secure safety from fire, panic and other dangers; (3) promote health and the general welfare; (4) provide adequate light and air; (5) prevent overcrowding of land; (6) avoid undue concentration of population; (7) facilitate the adequate provision of transportation, water, sewage, schools, parks and other public requirements; and (8) preserve the value of buildings.

**h.**     Defendant asserts that Plaintiff was afforded all required due process.

**i.**     Plaintiff's claims are barred, in whole or part, by waiver, estoppel or laches. Plaintiff's claims are barred by the doctrine of equitable estoppel.

**j.**     Plaintiff has failed to mitigate his damages and any amount of damages awarded should be reduced by the amount of damages that Plaintiff reasonably could have, but failed to mitigate.

**k.**     Plaintiff is not entitled to recover his attorney fees.

**l.**     Plaintiff is not entitled to a Temporary Restraining Order, Temporary Injunction, Permanent Injunction, or any other relief in equity or at law because: (1) Defendants have not committed a wrongful act; (2) Plaintiff cannot show a probable right to recovery; (3) Plaintiff cannot show imminent harm; (4) Plaintiff cannot show irreparable harm; (5) Plaintiff cannot show that it lacks an adequate remedy at law; and (6) Plaintiff has not otherwise plead a cause of action.

**m.**     Plaintiff has failed to adequately allege, and is unable to prove or identify, any official policy, custom, practice or usage that caused a violation of Plaintiff's constitutional or statutory rights.

n.     Alternatively, Plaintiff has failed to exhaust administrative or state law remedies.

## 4.     COUNTERCLAIM

Plaintiff's claims and causes of action against Defendant are wholly without merit, and are patently frivolous, in violation of F.R.C.P. 11.  The City should be awarded its attorney fees and costs incurred in defending this suit under F.R.C.P. 11.  Plaintiff should be barred from filing any new claims against Defendant regarding these issues in this suit unless Plaintiff obtains express permission from the Court to file same. Further, Plaintiff's claims are frivolous, unreasonable, or groundless, which entitles Defendant to its attorney fees under 42 U.S.C. § 1988.

## 5.     PRAYER

Defendant requests that upon hearing of this case, that Plaintiff take nothing, that Defendant have and recover judgment from Plaintiff for Defendant's attorney fees in this action, both through trial and in the event of an appeal, for pre- and post-judgment interest on all sums awarded at the maximum amounts allowed by law, for costs of court, and for such other and further relief to which Defendant may show itself to be justly entitled.

Respectfully submitted,

**WOLFE, TIDWELL & McCOY, LLP**
123 N. Crockett Street, Suite 100
Sherman, Texas   75090
903.868.1933 telephone
903.892.2397 facsimile

By: _____
Clark H. McCoy, Jr.
State Bar No. 90001803


## CERTIFICATE OF SERVICE

A true and correct copy of this document was served on May 1, 2003, as follows:

<u>VIA FACSIMILE 214.351.0466</u>
Christopher J. Caso
CASO EGELSTON & ECKERT, LLP
10246 Midway Road, Suite 202
Dallas, Texas  75229

_____
Clark H. McCoy, Jr.

---

## <u>LIST OF ATTORNEYS</u>

Christopher J. Caso
State Bar No. 03969230
CASO EGELSTON & ECKERT, LLP
10246 Midway Road, Suite 202
Dallas, Texas  75229
214.351.4121 telephone

Mr. Caso represents Plaintiff Khosrow Sadeghian.

Clark H. McCoy, Jr.
State Bar No. 90001803
WOLFE, TIDWELL & McCOY, LLP
123 N. Crockett Street, Suite 100
Sherman, Texas  75090
903.868.1933 telephone

Mr. McCoy represents Defendant City of Aubrey, Texas.

**EXHIBIT 6**

## PARTIES REQUESTING TRIAL BY JURY

Plaintiff Khosrow Sadeghian and Defendant City of Aubrey, Texas request trial by jury.

**EXHIBIT 7**

## NAME AND ADDRESS OF COURT FROM WHICH CASE IS REMOVED

16TH DISTRICT COURT
Denton County, Texas
1450 E. McKinney
Denton, Texas  76209-4524

**EXHIBIT 8**